

**FILED**
**JUNE 29, 2010**
KAREN S. MITCHELL
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| TONY WILSON, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:10-CV-0123 |
| | § | |
| RICK THALER, | § | |
| Director, Texas Dep't of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

### REPORT AND RECOMMENDATION TO
### DISMISS PETITION FOR A WRIT OF HABEAS CORPUS

Petitioner has filed with this Court a Petition for a Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. section 2254 in which he challenges the actions of the Texas Department of Criminal Justice (TDCJ). Petitioner is presently incarcerated at the Clements Unit pursuant to a 1986 conviction for burglary of a habitation and the resultant forty-five-year sentence. For the reasons hereinafter expressed, the undersigned United States Magistrate Judge is of the opinion petitioner's application for federal habeas corpus relief should be DISMISSED.

### I.
### PETITIONER'S ALLEGATIONS

Petitioner Wilson does not challenge his underlying conviction nor does he challenge a specific disciplinary proceeding. Instead, in his Petition (document #1) and Response to Briefing Order (document # 6), Wilson contends the TDCJ, Board of Pardons and Paroles, has, since

September 1, 1989, been violating the Ex Post Facto Clause by applying laws to petitioner that were enacted after the 1986 date on which he was convicted. Petitioner specifically takes issue with TDCJ's policies regarding the accrual of good-time credits and the restoration of forfeited good-time credits. Petitioner states he filed both a Step 1 and Step 2 grievance and that both were denied because the issue was not greivable.

To some extent, these claims sound more in civil rights than in habeas corpus, especially considering petitioner's language regarding overcoming official immunity and his representations that he has a cause of action in both civil rights and habeas corpus. (*See Original Habeas Corpus Petition*, doc. #1, pgs. 8, 9, 21). However, petitioner contends TDCJ has wrongfully deprived him of 2,500 days of good-time credits. Restoration of the good-time credits may allow petitioner to be released. Additionally, the only remedy petitioner seeks is restoration of the good-time credits and release from confinement. Therefore, the Court addresses these claims in habeas corpus, the form in which they were filed, instead of re-designating the case as a civil rights complaint.

II.
FAILURE TO EXHAUST

Under Texas law, an inmate challenging the calculation of time credits must file a complaint with the TDCJ Office of Time Credit Resolution prior to seeking relief in a state habeas proceeding under article 11.07 of the Texas Code of Criminal Procedure. *Ex parte Shepard*, 65 S.W.3d 673, 674-45 (Tex. Crim. App. 2002). The applicant may proceed with his article 11.07 application only after receiving a written decision from TDCJ. Tex. Gov't Code § 501.0081 (Vernon 2004). A petitioner challenging his time credits must exhaust his remedies under both section 501.0081 of the Texas Government Code and article 11.07 of the Texas Code of Criminal Procedure before filing

a federal habeas petition. *Bolden v. Director, TDCJ*, No. 6:08-CV-406, 2009 WL 1120010, at *5 (E.D. Tex. 2009)*; Hurley v. Quarterman*, No. 3:06-CV-913, 2007 WL 1435272, at *1-2 (N.D. Tex. 2009). Petitioner Wilson did not take these necessary steps. His petition is therefore dismissible for failure to exhaust. Even if petitioner had properly exhausted the issues raised in his habeas corpus petition, however, dismissal of his petition would still be warranted. *See* 28 U.S.C. § 2254(b)(2).

### III.
### GOOD-TIME CREDITS AND THE EX POST FACTO CLAUSE

To demonstrate an ex post facto violation, a petitioner must show a new law either:

1. punishes as a crime an act previously committed, which was innocent when done;

2. makes more burdensome the punishment for a crime, after its commission; or

3. deprives one charged with crime of any defense available according to law at the time the act was committed.

*Collins v. Youngblood*, 497 U.S. 37, 42, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30 (1990). Put another way, a law violates the Ex Post Facto Clause if it is retrospective *and* increases the punishment attached to the crime. *Weaver v. Graham*, 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981). Where a statue applies retroactively, the existence of an ex post facto violation depends on whether the statute constitutes additional criminal punishment for the crimes previously committed. *Id.* at 30, 101 S.Ct. at 964.

Petitioner contends the TDCJ has violated the Ex Post Facto Clause by retroactively applying rules regarding line class status and the accrual of good-time credits, specifically, Texas Government Code Sections 498.004 and 498.005. According to petitioner, TDCJ has revoked 2,500 days of his previously earned good-time credits "that should have been restored after a [six] month period after

date of loss of good conduct time." (*Response to Briefing Order*, doc. # 6, pg. 5). TDCJ's refusal to restore the good-time credits, petitioner Wilson contends, has increased his sentence and made his punishment more burdensome in violation of the prohibition against ex post facto laws.

### A. *The Legislative History of Good-Time Credit Laws in Texas*

In 1977, the Texas Legislature passed the following law under section 4 of Texas Civil Statues, article 6181-1:

> Good conduct time applies only to eligibility for parole or mandatory supervision . . . and shall not otherwise affect the inmate's term. Good conduct time is a privilege and not a right. Consequently, if during the actual term of imprisonment in the department, an inmate commits an offense or violates a rule of the department, all or any part of his accrued good conduct time may be forfeited by the director. The director may, however, in his discretion, restore good conduct time forfeited under such circumstances subject to rules and policies to be promulgated by the department.

Tex. Rev. Civ. Stat. Ann. art. 6181-1, § 4 (West 1977); *Ex parte Hernandez*, 645 S.W.2d 469, 471 (Tex. Crim. App. 1983).

In 1989, the Texas Legislature repealed article 6181-1 and replaced it with section 497.004 of the Texas Government Code. The statue, which became effective on September 1, 1989, at that time read:

> If, during the actual term of imprisonment of an inmate in the department, the inmate commits an offense or violates a rule of the department, the director may forfeit all or any part of the inmate's accrued good conduct time. The director may restore good conduct time forfeited under this subsection subject to rules adopted by the department.

Act of May 26, 1989, 71st Leg., R.S., ch. 212, § 2.01, sec. 497.004(a). The legislature also added that the board should annually review its policies, evaluate whether its prisons were overcrowded, and, if necessary, restore good conduct time under section 497.004(a) (detailed above). *Id.*, sec. 497.005.

Effective November 20, 1993, the Texas Board of Criminal Justice ordered TDCJ to "immediately discontinue the restoration of good conduct time forfeited as a result of disciplinary violations." *Ex parte Montgomery*, 894 S.W.2d 324, 326 (Tex. Crim. App. 1995). The Texas Legislature followed suit in 1995, amending the pertinent section[1] of the Texas Government Code to read:

> If, during the actual term of imprisonment of an inmate in the institutional division or in a transfer facility, the inmate commits an offense or violates a rule of the division, the department may forfeit all or any part of the inmate's accrued good conduct time. The department may not restore good conduct time forfeited under this subsection.

Act of May 29, 1995, 74th Leg., R.S., ch. 246, § 4, sec. 498.004(a). The legislature additionally removed the language allowing TDCJ to evaluate whether its prisons were overcrowded and, based upon that determination, restore good-time credits. *Id.*, sec. 498.005. Thus, effective September 1, 1995, the discretion to restore good-time credits forfeited for disciplinary violations was statutorily abolished.

In sum, since 1977, Texas law has established that (1) good conduct time cannot affect the term of incarceration to which a court has sentenced an inmate and (2) good conduct time "is not a vested right, but rather is a privilege which may be forfeited." *Ex parte Hernandez*, 645 S.W.2d 469, 471 (Tex. Crim. App. 1983); Tex. Rev. Civ. Stat. Ann. art. 6181-1, § 4 (West 1977). From 1977 to 1995, the director of the TDCJ was able to, *at his discretion*, restore good-time credits (although TDCJ policy established in 1993 that the director no longer was able to ever restore good-time credits).

---

[1] In 1991, the Texas Legislature renumbered section 497.004 to section 498.004 and section 497.005 to section 498.005. Act of Apr. 11, 1991, 72d Leg., R.S., ch. 16, § 10.01(a).

*B. Caselaw Regarding the Good-Time Credit Laws in Texas*

Importantly, the Fifth Circuit has reviewed the above-discussed legislative history. In fact, in *Hallmark*, the petitioner made an argument virtually identical to the one made by petitioner in the instant petition. *Hallmark v. Johnson*, 118 F.3d 1073, 1078 (5th Cir. 1997). The Fifth Circuit determined the change regarding the director's ability to restore lost good-time credits did not violate the Ex Post Facto Clause. *Id.* at 1079. In making this determination, the court pointed out the change did not retract already accumulated good-time credits nor did it deny prisoners the opportunity to earn good-time credits. *Id.* at 1078. In fact, prisoners "retained the opportunity to earn just as many good time credits as they could on the day that they committed their crimes." *Id.* The only thing prisoners lost as a result of the change was "the opportunity to have forfeited good time credits restored and only if (1) they committed a prison violation, (2) discretion was exercised to forfeit some of their good time credits because of the rule infraction, and (3) they would have, under the earlier discretionary scheme, had those good time credits restored." *Id.* at 1077-78. Moreover, the Fifth Circuit held, because there was always a possibility to lose earned good-time credits as a result of a disciplinary violation and never have them restored, the change in policy did not increase a prisoner's punishment. *Id.* at 1078. Revoking TDCJ's discretion to reinstate revoked good-time credits "did not substantially alter the consequences attached to a crime already completed, and thus it did not change the quantum of punishment such that it is unconstitutional." *Id.* Thus, the Fifth Circuit determined that any expectancy in good-time credits was "too attenuated and speculative" for the change revoking the director's ability to reinstate previously revoked good-time credits to constitute an ex post facto violation. *Id.*

*C. Petitioner has Failed to Demonstrate an Ex Post Facto Violation*

The issue in the instant case is whether the application of the 1995[2] legislation effectively increases or makes more burdensome petitioner Wilson's punishment, as he contends. As discussed above, the Fifth Circuit has already dealt with this issue. Under clear and binding Fifth Circuit precedent, the result in this case is clear. The TDCJ's removal of the director's ability to restore revoked good-time credits did not make Wilson's forty-five year punishment any longer. It simply made it impossible for him to have good-time credits restored. As such, TDCJ's application of the 1995 law does not violate petitioner's ex post facto rights. *See id.*

Wilson assumes TDCJ's computation of his good-time credits is less favorable now than it would have be if TDCJ applied the good-time credit laws from 1986, when he was convicted. His assumption is incorrect. Since 1977, Texas law has never required TDCJ restore good-time credits as a matter of right. As reviewed above, reinstatement of good-time credits was, under the law in effect in 1986, totally discretionary. *Id.* at 1079. Theoretically, the director could refuse restoration of petitioner's good-time credits even if TDCJ were forced to apply the law in effect in 1986.

Finally, petitioner contends the Texas Court of Criminal Appeals has concluded the retroactive application of the good-time credits laws violates the Ex Post Facto Clause. Wilson is correct that in *Ex Parte Rutledge*, the Texas Court of Criminal Appeals held the retroactive application of a law making an offense ineligible for the grant of good-time credits violated a prisoner's ex post facto rights. 741 S.W.2d 460 (Tex. Crim. App. 1987). That court has, however, since abrogated *Rutledge*.

---

[2] Petitioner avers TDCJ has been violating his ex post facto rights since 1989 by failing to restore his good-time credits. As detailed above, however, the change in the statute revoking the director's ability to award revoked good-time credits was not passed until 1995.

In *Ex parte Hallmark*, the Texas Court of Criminal Appeals disavowed the reasoning in *Rutledge*. 883 S.W.2d 672, 674 (Tex. Crim. App. 1994). It stated:

> Applicant contends application of § 498.005 and the policy adopted pursuant to that section is an *ex post facto* violation under *Ex Parte Rutledge*, presumably because it increases the punishment attached to his offense. We do not agree.
> . . .
> Section 498.005 and the policy enacted pursuant thereto refusing to restore forfeited good time do not increase the punishment proscribed for an offense. The statutes governing good time and forfeiture have, since 1977, specifically stated that good conduct time applies only to eligibility for parole or mandatory supervision . . . Good time credit has no effect on the length of sentence imposed. Therefore, Applicant's punishment has not been affected by the forfeiture of good time. Retroactive application of the policy ordered pursuant to § 498.005 does not violate *ex post facto* provisions of the state or federal constitutions.

*Id.* (internal citations omitted).

Thus, under both Texas and federal law, petitioner has failed to demonstrate an ex post facto violation. The change in the law was retrospective, but it did not increase the punishment attached to the crime. *See Weaver*, 450 U.S. at 29, 101 S.Ct. at 964. Rather, it merely took away TDCJ's discretion to reinstate good-time credits. Petitioner's sentence remained at forty-five years. He is not otherwise entitled to good-time credits. *See Madison v. Parker*, 104 F.3d 765, 769 (5th Cir. 1997). Were the petition not dismissed for failure to exhaust, it should be dismissed for failure to demonstrate a constitutional violation.

IV.
RECOMMENDATION

Petitioner has failed to exhaust his claims and, in the alternative, failed to present any meritorious constitutional claim. Therefore, it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Petition for a Writ of Habeas Corpus by a Person in State Custody filed by petitioner TONY WILSON be DISMISSED.

V.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 29th day of June, 2010.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. Petitioner. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. Petitioner. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. Petitioner. 72(b)(2); *see also* Fed. R. Civ. Petitioner. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).